

JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC., et al., | Case No. 2:22-mc-0090 SVW (PVCx) |
| Movants, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL TIKTOK INC. TO COMPLY WITH OUT-OF-DISTRICT SUBPOENAS (Dkt. No. 1)** |
| v. | |
| TIKTOK INC., | |
| Respondent. | |

**I.**

**INTRODUCTION**

On April 11, 2022, movants Vital Pharmaceuticals, Inc., doing business as Bang Energy, and its CEO, Jack Owoc (collectively, "Movants"), filed a motion to compel respondent TikTok Inc. to comply with two out-of-district subpoenas issued in the matter of *UMG Recordings, Inc., et al. v. Vital Pharmaceuticals, Inc., et al.*, Case No. CV 21-60914 WPD (S.D. Fla.), which is currently pending in the Southern District of Florida (the "Florida Action"). ("Motion," Dkt. No. 1). The Motion is supported by the declaration of Jill J. Ormond ("Ormond Decl.") and accompanying exhibits ("Exhs. 1-12").[1] TikTok

---

[1] Ormond's declaration is docketed at Dkt. No. 1-1; each of its twelve exhibits is separately docketed at Dkt. Nos. 1-2 through 1-13. The exhibits are not consecutively paginated as a set, and the two subpoenas that are at issue in this Motion, attached as

filed an Opposition on April 19, 2022, ("Opp.," Dkt. No. 7), supported by the declaration of David Mattern ("Mattern Decl.," Dkt. No. 7.1), and accompanying exhibits. ("Exhs. A-B," Dkt. Nos. 7.2-7.3).[2]  On April 26, 2022, Movants filed a Reply. ("Reply," Dkt. No. 9).

On May 6, 2022, the Friday before the then-scheduled May 10, 2022 hearing, Movants filed an 82-page Joint Stipulation without explanation or prior authorization from the Court.[3]  ("Jt. Stip.," Dkt. No. 17).  The Joint Stipulation appears to abandon some arguments in the Motion.  For example, the original Motion confusingly sought compliance with both the First and Second Subpoenas, even though the First Subpoena appeared to have been entirely superseded by the Second Subpoena.  Additionally, by its lack of specificity, the Motion suggested that the entirety of the Second Subpoena was at issue, whereas the Joint Stipulation more clearly identifies the specific requests for which a further response is requested.  The declarations and attached exhibits that accompanied the Motion and the Opposition were not re-submitted with the Joint Stipulation.  Accordingly, the Court assumes that Movants' intent was that the Joint Stipulation would supersede the prior briefing, but that the declarations and exhibits submitted by both

---

Exhibits 3 and 8, are not consecutively paginated internally.  Accordingly, the Court will cite to the subpoenas by name ("First Subpoena," "Second Subpoena"), followed by the CM/ECF-generated page numbers for the subpoenas on the Court's docket, which count the exhibit cover as "page one."  All other exhibits attached to Ormond's Declaration will be cited to by exhibit number, followed by the internal pagination for that exhibit.  The Court reminds counsel for both sides that Local Rule 11.3-3, which provides "[a]ll documents shall be numbered consecutively at the bottom of each page," applies to exhibits as well as to briefs.  C.D. Cal. L.R. 11.3-3.

[2] The Court will cite to both exhibits attached to Mattern's declaration by exhibit letter and the CM/ECF-generated page numbers for that exhibit on the Court's docket.

[3] Local Rule 7-10 provides that "Absent prior written order of the Court, the opposing party shall not file a response to the reply."  The Local Rules do not contemplate a situation in which a party files a motion twice, once under Local Rule 7, then, on the eve of the hearing, again under Local Rule 37.  However, the intent of Local Rule 7-10 is that once a motion-opposition-reply are filed, briefing is closed without prior authorization of the Court.  By double-briefing this dispute, Movants have unnecessarily burdened both the Court and TikTok with duplicative, though not exactly identical, statements of the parties' positions.

parties would still apply.  While Movants' manner of presenting this discovery dispute to

the Court is highly irregular because the Joint Stipulation more clearly articulates the

parties' positions, especially Movants', and should have been filed in the first instance, the

Court will excuse Movants' procedural deficiencies and consider the arguments as

presented in the Joint Stipulation.  However, even though the Court will primarily rely on

the Joint Stipulation for the organization of this Order, it may still refer to the Motion-

Opposition-Reply when warranted.[4]


On May 31, 2022, the Court held a hearing on the Motion via Zoom.  For the

reasons stated below and on the record at the hearing, the Motion is GRANTED IN PART

and DENIED IN PART.  TikTok shall serve supplemental written responses and produce

responsive documents, if any, to the production requests for which a supplemental

response is required by this Order within fourteen days of the date of this Order.  If no

documents exist that are responsive to a production request for which a supplemental

response is required, the response shall affirmatively so state.  TikTok shall present a

corporate witness or witnesses to testify consistent with this Order at a mutually agreeable

date and time, but in no case not later than thirty days from the date of this Order.


**II.**

**BACKGROUND FACTS**


Bang Energy is a brand of energy drink that promotes its products on social media,

at in-person events, and in venues where the drinks are sold, among other places.  (Jt. Stip.

---

[4] The Court notes that because of the seemingly premature submission of the Motion, the
parties were required to address issues that are now plainly moot.  For example, one of
TikTok's challenges to the First Subpoena was that it named an improper location for
compliance.  Had Movants not insisted on demanding compliance with the First Subpoena
as well as the Second Subpoena in the Motion, that issue would have been avoided.
Similarly, if Movants had presented this discovery dispute in a Joint Stipulation in the first
instance, TikTok would not have been required to brief its position on Movants' failure to
comply with Local Rules 37 and 45.  Additionally, TikTok would not have been required
to set out its arguments twice, in both the Opposition and the Joint Stipulation.

at 1).  In the Florida Action, which was filed on April 28, 2021, eight music labels and publishers (collectively, the "Labels") contend that Movants infringed their copyrights by using their music without a license in short-form commercial videos posted on TikTok through their TikTok accounts, @bangenergy and @bangenergy.ceo.  (*See id.* at 1-2; Ormond Decl., Exh. 1 ¶¶ 3-4).  In their answer to the Complaint, Movants denied infringement on the ground that their TikTok accounts used "music provided to Bang Energy by TikTok" from the TikTok music library.  (Ormond Decl., Exh. 2 ¶ 37).  Movants state that they believed, in reliance on alleged representations by TikTok, that because the songs were supplied by TikTok's music library, they could be used in video posts without infringement through TikTok's licenses with the Labels.  (Jt. Stip. at 2).  Movants also raised in their answer the affirmative defense of consent and license, asserting that the Labels' claims "are barred by [the Labels'] license, consent, and acquiescence to the use alleged as infringement."  (*Id.*; *see also* Ormond Decl., Exh. 2 at 13 (affirmative defense no. 4)).

TikTok's predecessor company, Musical.ly, first entered into an agreement for the use of music with the Labels in 2016.  (Jt. Stip. at 7).  TikTok itself launched in 2018.  (*Id.* at 4).  TikTok explains that audio clips from its library of music may be used, but "with clear limitations."  (*Id.*).  According to TikTok, "[s]ince before 2016, TikTok's Terms of Service have instructed users that TikTok may only be used 'for private, non-commercial use' and that TikTok grants users no licenses with respect to music."  (*Id.* at 5).  TikTok states that it last updated its Terms of Service in February 2019.  (*Id.* at 9).  That update, like the "materially identical limitations" in Musical.ly's Terms of Service, expressly provides that TikTok's services are for private, non-commercial use; that music licenses to TikTok are solely for "personal, non-commercial use," and that no rights are licensed with respect to the sound recordings and musical works embodied in them "that are made available from or through the service."  (*Id.*) (*citing generally* 2019 Terms of Service, Mattern Decl., Exh. B at 7).  In 2020, TikTok launched "an audio library of royalty-free

1  music that may be used for commercial purposes," although "none of the music that

2  Universal Music accuses Bang Energy of infringing was ever available through that

3  library." (Opp. at 3-4).

4

5      On July 26, 2021, the court in the Florida Action issued a scheduling order that set

6  February 25, 2022 as the discovery cut-off. (Florida Action, Dkt. No. 17 at 2). However,

7  on March 1, 2022, the court amended the scheduling order and reset the discovery cut-off

8  for April 15, 2022. (*Id*., Dkt. No. 39 at 2). On April 18, 2022, the Florida Court denied

9  the parties' respective motions to extend the trial date and pretrial deadlines. (*Id*., Dkt.

10  No. 49 at 1-2).[5]  As such, the discovery cut-off expired on April 15, 2022, and trial is set

11  to begin on August 15, 2022. (*Id*., Dkt. No. 39 at 1-2).

12

13      On December 9, 2021, two and a half months before the original discovery cut-off,

14  Movants served a subpoena for documents on TikTok. ("First Subpoena," Ormond Decl.

15  ¶ 4 & Exh. 3). The subpoena sought four categories of documents: (1) all contracts,

16  agreements, licenses and amendments between Tik Tok and the Labels between 2018 and

17  the present; [6] (2) all guidelines, directions and communications received by TikTok from

18  the Labels concerning the use of the entities' sound recordings on TikTok; (3) the name(s)

19

20  [5] On April 13, 2022, Bang Energy filed a motion in the Florida Action seeking a three-
   month continuance of "all relevant deadlines," including a continuance of the discovery

21  cut-off from April 15, 2022 to July 14, 2022. (Florida Action, Dkt. No. 44 at 7). Bang
   Energy sought the continuance "[t]o accommodate the critical TikTok-related discovery"

22  from both TikTok and the plaintiffs in the Florida Action. (*Id*.).

23  [6] The term "Labels" as used in the First Subpoena encompassed not only the eight
   plaintiffs in the Florida Action (UMG Recordings, Inc.; Capitol Records, LLC; Universal

24  Music Corp.; Universal Music - Z Tunes LLC; Universal Musica, Inc.; PolyGram
   Publishing, Inc.; Songs of Universal, Inc.; and Universal Music - MGB NA LLC), but

25  also eight other non-party music labels and publishers. (First Subpoena at 5). However,
   in the Second Subpoena, which repeated the document requests in the First Subpoena,

26  "Labels" refers solely to the eights plaintiffs in the Florida Action. (Second Subpoena at
   6-8). Because the Joint Stipulation concerns only the Second Subpoena, the Court

27  understands that Movants are not seeking documents and information relating to the eight
   non-plaintiff entities listed in the First Subpoena. "Labels" as used in this Order will refer

28  solely to the eight plaintiffs in the Florida Action.

of any company TikTok retained for the purpose of monitoring the use of the Labels' sound recordings; and (4) any and all reports TikTok provided to the Labels regarding the use of the Labels' sound recordings between 2018 and the present.  (*Id*. at 5).

After receiving an extension, on January 31, 2022, TikTok served written objections to the First Subpoena.  (Ormond Decl., Exh. 4).  Among other grounds, TikTok objected to the requests to the extent that they sought documents and information related to the eight plaintiffs in the Florida Action, *i.e.*, the "Labels," because the documents could be obtained from parties to the Action.  TikTok objected to the requests that sought documents and information related to the eight other entities listed in the First Subpoena that are not plaintiffs in the Florida Action on the ground that TikTok's communications with nonparties are irrelevant to the Florida Action.  TikTok objected to the request seeking the identity of the company or companies it used to monitor use of the Labels' sound recordings on the ground that the information was not relevant to the claims or defenses in the Florida action.  TikTok objected to all of the requests on the grounds that they sought confidential proprietary or trade secret information and failed to comply with Rule 45's requirements regarding the place of compliance.[7]  In light of these and other objections, TikTok stated that it would not produce documents in response to any of the requests in the First Subpoena.  (*Id*. at 5-8).

On February 2, 2022, the Labels produced a "highly-redacted" copy of their license agreement with TikTok to Movants, after which Movants' counsel met and conferred with

---

[7] The First Subpoena designated the place of production as the Miami, Florida office of Bang Energy's counsel, Gordon, Rees, Scully Mansukhani LLP.  (First Subpoena at 2).  TikTok is located in Culver City, California, in the Central District of California.  (Ormond Decl., Exh. 4 at 2; Mattern Decl., Exh. B at 19).  Federal Rule of Civil Procedure 45(c)(2)(A) provides that a subpoena may command production of documents, electronically-stored information, or tangible things "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. (c)(2)(A).  During the meet and confer process regarding the First Subpoena, Movants offered "to stipulate to the place of compliance and production as Los Angeles, California."  (Ormond Decl., Exh. 5 at 2).

6

counsel for the Labels and TikTok about the propriety of the redactions.  (Motion at 3).  On February 28, 2022, after the expiration of the original discovery cut-off but before the Florida Court extended the deadline, Movants sent a "meet and confer" letter to TikTok raising their concerns about its refusal to produce any documents in response to the First Subpoena.  (Ormond Decl., Exh. 5).  TikTok's counsel responded to the letter on March 2, 2022, and a telephonic conference of counsel took place on March 9, 2022.  (*Id*. ¶ 6 & Exh. 6).  During the conference, TikTok agreed to consider making a supplemental response to the first and third requests, which respectively sought agreements and licenses between TikTok and the Labels, and the identities of any companies used to monitor the use of the Labels' sound recordings.  (*Id*. ¶ 7 & Exh. 7).

Also on March 9, 2022, Movants served a second subpoena on TikTok.  ("Second Subpoena," *id*. ¶ 9 & Exh. 8).  Unlike the First Subpoena's limited demands for documents, the Second Subpoena sought both documents and corporate testimony and greatly expanded the scope of the information requested.  The requests for production of documents repeated the four requests in the First Subpoena,[8] and added eleven more.  Among other things, the additional requests seek documents addressing the distinctions between commercial and non-commercial users, user confusion related to rights to music in TikTok's libraries, TikTok's monitoring of alleged copyright infringement and its removal of infringing posts, and analytics data regarding the @bangenergy and @bangergy.ceo accounts from January 2016 to the present.  (Second Subpoena at 8-10).  The eighteen deposition topics for TikTok's corporate witness(es) generally seek

---

[8] The first four document requests in the First and Second Subpoenas largely mirror each other, though with some small differences.  As noted above, the first production request in the Second Subpoena seeks information about TikTok's communications and agreements only with the eight plaintiffs in the Florida Action, while its counterpart in the First Subpoena sought the same documents from the eight plaintiffs in the Florida Action and eight other non-party music labels and publishers.  The Second Subpoena also enlarges the period for production of agreements and licenses in the first request from 2018 to the present (First Subpoena) to 2016 to the present (Second Subpoena), and the period for production of reports to the Labels in the fourth request from 2018 to the present (First Subpoena) to 2017 to the present (Second Subpoena).  (*Compare* First Subpoena at 5 *with* Second Subpoena at 8).

testimony about the same subjects addressed in the document requests, with the addition
of a topic seeking testimony about TikTok's communications with seven non-party
companies concerning each non-party's use of music in its TikTok posts.  (*Id*. at 5-7).

Counsel for Movants met and conferred with counsel for TikTok on March 22, 24,
and 28, 2022 to discuss the Second Subpoena.  (Ormond Decl. ¶ 10).  On April 1, 2022,
TikTok served written responses and objections to the notice of deposition in the Second
Subpoena and, separately, the requests for production of documents.  TikTok agreed to
produce a witness to testify about certain Topics, with some occasionally significant
qualifications, but stated that it would not produce a witness to testify about other Topics.
(*See generally id*., Exh. 9).  TikTok similarly agreed to produce documents, again with
some occasionally significant qualifications, in response to certain Requests, but stated
that it would not produce any documents in response to other Requests.  (*Id*., Exh. 10).
This Order will address the substance of the parties' disputes regarding specific deposition
topics and production requests in Part IV below.

**III.**

**STANDARD**

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015,
provides:

Parties may obtain discovery regarding any nonprivileged matter that is
relevant to any party's claim or defense and proportional to the needs of the
case, considering the importance of the issues at stake in the action, the
amount in controversy, the parties' relative access to relevant information,
the parties' resources, the importance of the discovery in resolving the
issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit.  Information within this scope of discovery

need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "The relevance standard is commonly recognized as one that is necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Doherty v. Comenity Capital Bank & Comenity Bank*, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Sci. Games Corp. v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) ("Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope."); *Wagafe v. Trump*, 2018 WL 348470, at *1 (W.D. Wash. Jan. 10, 2018) ("[T]the scope of discovery is broad.").  "Proportionality focuses on the marginal utility of the discovery sought."  *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 180 F. Supp. 3d 273, 280 n.43 (S.D. N.Y. 2016) (internal quotation marks and citation omitted).  While the scope of permissible discovery may be broad, because discovery must be both relevant and proportional to the needs of the case, the right to discovery, even plainly relevant discovery, is not limitless.

A party seeking discovery from a third party may obtain a subpoena for the evidence pursuant to Rule 45.  "The scope of discovery through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)."  *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015); *see also Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) ("The limits and breadth of discovery under Rule 26 apply to Rule 45 subpoenas to

non-parties."); *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D. N.Y. 2017) ("In general, the relevance standard that applies when seeking discovery from a party also applies to non-parties."); *MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018) ("[T]he Court may properly apply the Rule 26(b)(1) proportionality factors in the context of a Rule 45(d)(3)(A) motion to quash or a Rule 45(d)(2)(B)(i) motion to compel or, for that matter, in the context of Rule 45(d)(1)'s duty to avoid imposing undue burden or expense on a person subject to the subpoena[.]"). Accordingly, a subpoena request that does not comply with the requirements of Rule 26(b) may properly be objected to on that basis. *See Hosseinzadeh v. Bellevue Park Homeowners Ass'n*, 2020 WL 3271769, at *2 (W.D. Wash. June 17, 2020) ("If a subpoenaed party believes that a subpoena requires it to produce material that is irrelevant, disproportionate to the needs of the case, or privileged, then the subpoenaed party may move to quash or modify the subpoena.").

"In addition to the discovery standards under Rule 26 that are incorporated by Rule 45, Rule 45 itself provides that 'on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden.'" *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). Whether a subpoena imposes an undue burden on a particular witness is a "case specific inquiry." *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009) (internal quotation marks and citations omitted). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *see also Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery."). In determining whether a subpoena poses an undue burden, courts "'weigh the burden to the subpoenaed party against the value of the

information to the serving party.'"  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D.
Cal. 2005) (quoting *Travelers Indem. Co. v. Metropolitan Life Insur. Co.*, 228 F.R.D. 111,
113 (D. Conn. 2005)).  Courts are particularly reluctant to require a non-party to provide
discovery that can be produced by a party.  Accordingly, "[a] court may prohibit a party
from obtaining discovery from a non-party if that same information is available from
another party to the litigation."  *Rocky Mountain Medical Management*, 2013 WL
6446704, at *4 (D. Idaho Dec. 5, 2013); *see also Precourt v. Fairbank Reconstruction
Corp.*, 280 F.R.D. 462, 467 (D. S.D. 2011) ("If the party seeking information can easily
obtain the same information without burdening the non-party, the court will quash the
subpoena."); *Brown v. City of Syracuse*, 648 F. Supp. 2d 461, 466 (N.D. N.Y. 2009)
(when balancing hardships between requesting party and non-party, court should consider
whether there are other sources for obtaining the material); *Arthrex, Inc. v. Parcus
Medical, LLC*, 2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011) ("A party's ability to
obtain documents from a source with which it is litigating is a good reason to forbid it
from burdening a non-party with production of those same requests.").  Finally, Rule
45(d)(3)(B)(i) also permits the Court to quash or modify a subpoena if compliance would
require disclosure of a trade secret or other confidential research, development, or
commercial information.[9]

# IV.

# DISCUSSION

        In determining whether Movants' discovery requests seek information that is
relevant and proportional to the needs of this case, the Court notes as a preliminary matter
that copyright infringement is a strict liability offense.  *Buck v. Jewell-Lasalle Realty Co.*,
283 U.S. 191, 198 (1931); *Monge v. Maya Magazines Inc.*, 688 F.3d 1164, 1170 (9th Cir.

---

[9] The Protective Order issued in the Florida Action applies to third-party confidential
information and documents in this proceeding.  (Ormond Decl., Exh. 11 at 3, ¶ 4).

2012).  Under 17 U.S.C.A §504(a), an infringer of copyright will be liable for either
(1) the copyright owner's actual damages and any additional profits of the infringer; or
(2) statutory damages.  While an infringer's state of mind is generally not relevant to a
finding of liability, whether an infringement was "willful" or "innocent" is a critical factor
in assessing the amount of statutory damages.  Here, Movants contend that any alleged
infringement was innocent.

Whether a defendant's infringement is innocent is a factual determination for
which the defendant bears the burden of proof.  17 U.S.C. § 504(c)(2); *see also Los
Angeles News Serv. v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 995 (9th Cir. 1998);
*Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985).  The evidence must
establish that the infringer has a "good faith belief in the innocence of [its] conduct" and
that such a belief was reasonable.  *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d
1332, 1336 (9th Cir. 1990) (willfulness not present where defendant believed it was acting
under color of right granted by a license); *see also Frank Music Corp.*, 772 F.2d  at 515
(defendant's reasonable belief that it had a valid license to use plaintiffs' works
sufficiently established that infringement was not willful); *Danjaq LLC v. Sony Corp.*, 263
F.3d 942, 959 (9th Cir. 2001) (production of works under a reasonable belief that the
infringer possessed a license or implied license was not willful infringement); *Bagdadi v.
Nazar*, 84 F.3d 1194, 1201 (9th Cir. 1996) (reasonable reliance on an "unambiguous" but
inaccurate copyright notice was not willful infringement).

A.   **Deposition Topics**

      1.   **TikTok's Policies, Procedures And Notifications Concerning The Use Of Music From Its Libraries On The TikTok Platform (Topic Nos. 1-4 and 7-8)**

Topic 1:  The policies and practices of TikTok Inc. (and its predecessor music.ly) (collectively referenced herein as "TikTok") and TikTok's representatives, employees, agents, and contractors regarding TikTok's users, including the use of music on TikTok's platform between 2014 and present.[10]

TikTok has agreed to designate a witness to discuss its policies regarding limitations on the commercial use of music by a user since 2016, which it contends will address the only matter relevant to Movants' defense -- that they had a license because the delineation between commercial and non-commercial users allegedly did not exist at the time the purportedly infringing videos were posted.[11]  (Jt. Stip. at 8).  According to TikTok, Movants have not identified any other user-related policies and practices relevant to the Florida Action, and as such, the Topic is overly broad and disproportionate to the needs of this case.  (*Id*. at 9-10).  Furthermore, TikTok contends that Movants' apparent belief that TikTok's Terms of Service "changed" in 2020 is "demonstrably false."  (*Id*. at 9).  Movants claim that testimony about commercial use limitations is not sufficient, as they are seeking testimony about policies and changes on the use of music from the TikTok libraries for both commercial and non-commercial purposes.  (*Id*. at 8).  Movants argue that the distinction between commercial and non-commercial users did not exist prior to the creation of TikTok's commercial music library in 2020.  (*Id*.).

---

[10] During the meet and confer discussions, Movants "clarified" that Topic 1 seeks "testimony specifically relating to TikTok's policies and practices on the use of music from TikTok's music libraries, as those policies and practices evolved from 2016 . . . to the present."  (Jt. Stip. at 7).

[11] At the hearing, counsel for Movant clarified that the time frame that the infringing videos were posted on TikTok was 2019 to 2020.

1

## DECISION

2

3        TikTok has agreed to produce a witness who will testify about policies regarding

4    limitations on the commercial use of music by a user since 2016.  The Court finds that any

5    information sought beyond this is not relevant.  For this reason, the motion to compel as to

6    Topic 1 is DENIED to the extent that it seeks information exceeding the scope of

7    TikTok's agreed-upon designation.

8

9        Topic 2:  The history of distinguishing commercial users of the TikTok
         platform from other users.

10       Topic 3:  The criteria TikTok used to designate a user as a commercial user.

11       Topic 4:  This history of creating a commercial music library that is
         distinguishable from a noncommercial music library, including the
12       background of this change, when this change occurred, TikTok's reasons
         for making this change, any steps TikTok took to make this change known
13       to all users, and any steps TikTok took to enforce this change in policy.

14

15       TikTok has agreed to designate a witness to discuss the creation of its commercial

16   music library and its policies regarding the commercial use of music.  According to

17   TikTok, whether Movants had a license to use music from its music libraries is the only

18   issue relevant to the Florida Action.  (Jt. Stip. at 11, 13).  TikTok states that it is not clear

19   what more Movants want beyond TikTok's agreed designation.  (*Id*. at 15).  Furthermore,

20   TikTok explains that it, as a service provider, does not categorize users as "commercial"

21   and "non-commercial."  (*Id*. at 11, 13).  Movants claim that they require testimony about

22   "the history of the distinctions between commercial and other music libraries and users,"

23   not just the creation of the commercial music library.  (*Id*. at 11-12).  Specifically with

24   respect to Topic No. 4, Movants state that, in addition to testimony about TikTok's

25   creation of a commercial library and its commercial use policies, they are seeking

26   information about TikTok's communications to its users to notify them of the distinctions

27   between the commercial and other music libraries.  (*Id*. at 14).

28

**DECISION**

The Court finds that Movants have not made an adequate showing as to why they are entitled to the testimony sought in Topics 2-4.  For this reason, the motion to compel as to Topics 2-4 is DENIED to the extent that it seeks information exceeding the scope of TikTok's agreed-upon designation.

> Topic 7:  TikTok's policies, practices, knowledge, and notification to a commercial user's use of the TikTok's non-commercial music library.
>
> Topic 8:  TikTok's involvement and communications with users, including Defendants and Defendants' representatives, regarding posts on TikTok related to Bang Energy, including but not limited to the post attached hereto as Exhibit 1, Bates No. VPX-UMG-000090 and VPX-UMG-000094.

TikTok has agreed to designate a witness to discuss the creation of its commercial music library and its policies regarding the commercial use of music, specifically "including whether a commercial user may use TikTok's non-commercial music library." (*Id*. at 16).  TikTok notes that it does not control whether a user elects to have a TikTok for Business account, or the content of any of its users' posts.  (*Id*.).  TikTok further claims that to the extent that Movants are seeking information about notifications to other users, the Topic is not relevant or proportional to the needs of the case.  (*Id*. at 16-17). Movants argue that TikTok's agreed designation is not sufficient because Movants also seek information about TikTok's "knowledge of and communications to users in cases of commercial users' use of the non-commercial library."  (*Id*. at 16).

**DECISION**

The Court finds that Movants have not demonstrated the need for testimony as to Topic 7 beyond what TikTok has agreed to provide.  For this reason, the motion to compel as to Topic 7 is DENIED to the extent that it seeks information exceeding the scope of TikTok's agreed-upon designation.  Topic 8 seeks in part information about posts by users

other than Bang Energy related to Bang.  These users, sometimes called "influencers," posted videos related to Bang in order to promote Bang's products.  At the hearing, Movants' counsel stated that these influencers are "commissioned" by Bang to promote Bang's products. However, it should not be TikTok's burden to search for these influencers and their posts, which are, or should be, known to Bang.  For this reason, the motion to compel as to Topic 8 is GRANTED IN PART.  TikTok is ORDERED to present a witness to testify about TikTok's involvement or communications with Movants regarding Bang Energy's video posts alleged to have infringed the Labels' copyright.

## 2.    TikTok's Communications To Users Regarding Permissible And Impermissible Use Of Music On TikTok And Similar Confusion On Permitted Uses (Deposition Topics 5-6 and 9-13)

> Topic No. 5:  TikTok's communications to users, including Defendants Vital Pharmaceuticals, Inc. d/b/a Bang Energy, and Jack Owoc ("Defendants") and Defendants' representatives, regarding the use of music in videos created or posted on the TikTok platform, including any copyright policies, disclaimers, and/or restrictions on such use.[12]

TikTok agreed to designate a witness to discuss its copyright policies, disclaimers, and/or restrictions on the use of music on TikTok.  (Jt. Stip. at 19).  Because that agreed designation largely tracks the language of the Topic, TikTok contends that to the extent Movants seek to compel more, the motion should be denied.  (*Id*. at 19-20).  Movants state that TikTok's reduction of the Topic to a "narrow issue" is insufficient because it does not expressly include communications to Bang Energy about its specific use of music in TikTok posts.  (*Id*. at 19).

---

[12] During the meet and confer discussions, Movants offered to limit Topic 5 to communications with Bang Energy and/or its representatives.  (Jt. Stip. at 19).

1

**DECISION**

2

3        The Court finds that Movants have demonstrated the need for and relevance of the

4  testimony sought in Topic 5 to the extent it concerns communications between TikTok

5  and Movants and/or Movants' representatives.  For this reason, the motion to compel as to

6  Topic 5 is GRANTED IN PART.  However, the scope of the Topic shall be limited only

7  to communications between TikTok and Movants and/or Movants' representatives.

8

9        <u>Topic 6</u>:  TikTok's communications to users regarding the user's suspected unauthorized use of music.[13]

10        <u>Topic 9</u>:  TikTok's knowledge of any confusion expressed by TikTok users
related to a user's rights to use music in TikTok's music libraries on posts
11  for the TikTok platform.

12

13        TikTok has not agreed to designate a witness for Topics 6 and 9, even as rewritten

14  by Movants to limit the testimony respectively to communications about "unauthorized

15  uses of music from TikTok's musical libraries and general communications about such

16  unauthorized uses" or "any confusion expressed to TikTok" to or by users that are

17  "similarly situated" to Bang Energy.  (Jt. Stip. at 22, 25).  According to TikTok, its

18  communications to other users, or other users' understanding of TikTok's Terms of

19  Service, have no bearing on whether Movants had a license or what Movants understood.

20  (*Id*. at 23, 26).  Furthermore, TikTok's "robust" notice-and-takedown policy to address

21  user infringements in compliance with the Digital Millennium Copyright Act ("DMCA")

22  is described in TikTok's intellectual property policy.  (*Id*. at 23-24, 26).  TikTok maintains

23  that the Topic as written is over broad and seeks irrelevant information, and argues that a

24  nonparty should not have to "'do the work of tailoring a subpoena'" to what the requesting

25  party needs.  (*Id*. at 24, 27) (quoting *Virginia Dept. Of Corrections v. Jordan*, 921 F.3d

26

---

27  [13] During the meet and confer discussions, Movants offered to limit Topic 6 to
"unauthorized uses of music from TikTok's musical libraries and general communications
28  about such unauthorized uses, not as to any specific users."  (Jt. Stip. at 21).

180, 190 (4th Cir. 2019)). Movants contend that the information they seek "bears on [TikTok's] complex and unclear usage policies and mechanics" and whether and how TikTok informed users of violations of music library uses. (*Id*. at 21-22, 24-25). Movants maintain that the "existence of a license creates an affirmative defense to a claim of copyright infringement." *quoting Oracle USA, Inc. v. Rimini St., Inc*., 879 F.3d 848, 954 (9th Cir. 2018). They also note that an implied license is also an affirmative defense and that the materials sought in the topic bears on the issue of "innocent infringement." *See* 17 U.S.C. § 504 (c)(2). (*Id*. at 20-21). Movants believe that this information will support their contention that Bang Energy reasonably believed it was not violating TikTok's policies or the Labels' copyrights. (*Id*. at 22, 25).

## DECISION

The Court finds that Topic 6, as written, is overly broad and is not relevant to any claim or defense. For these reasons, the motion to compel as to Topic 6 is DENIED. As for Topic 9, which seeks testimony about "any confusion" expressed by TikTok users related to a user's rights to use music found in TikTok's music library for posts, the Court finds this topic does not relate to the claims and defenses in the Florida Action. The Court is not persuaded that confusion experienced by other users has any bearing on whether Bang Energy's alleged infringement was willful or innocent. Further, the term "any confusion" is vague and unclear. For these reasons, the motion to compel as to Topic 9 is likewise DENIED.

> Topic 10: TikTok's knowledge of the number of accounts that have been suspended or terminated on the TikTok platform as a result of actual or alleged copyright violations from 2016 through the present.[14]

---

[14] During the meet and confer discussions, Movants "clarified" that Topics 10 and 11 seek "only information related to the number of suspended or terminated accounts due to music copyright violations based on music from TikTok's music libraries, not for any user-supplied music." (Jt. Stip. at 27, 30).

1
2

> Topic 11: TikTok's knowledge of the number and nature of posts removed from the TikTok platform as a result of suspected or actual copyright violations from 2016 through the present.

3

4    TikTok has not agreed to designate a witness for Topics 10 and 11 as it maintains

5    that the information requested is not relevant to a claim or defense or and is not

6    proportional to the needs of the case. (Jt. Stip. at 28, 31-32). According to TikTok, this

7    Topic seeks information only about its DCMA notice and takedown policy, which has no

8    relevance to Movants' case. (*Id*. at 29). TikTok contends that whether other users

9    engaged in copyright infringement or had their accounts terminated has no bearing on

10   whether Movants engaged in copyright infringement. (*Id*.). Movants contend, as they did

11   with respect to Topics 6 and 9, that the information requested by Topic 10 bears on

12   TikTok's "complex and unclear usage policies and mechanics" and users' confusion with

13   the same. (*Id*. at 28, 30-31).

14

15                                    **DECISION**

16

17   The Court finds that Topic 10, as written, is not tailored to the issues related to this

18   case. For example, the Topic does not state that it seeks information about accounts

19   suspended or terminated for *music* copyright violations, as in this case. Furthermore,

20   whether other users' accounts were suspended or terminated for copyright infringement is

21   not relevant to the claims or defenses here. For these reasons, the motion to compel as to

22   Topic 10 is DENIED. Topic 11 also does not request information about posts that were

23   removed for suspected or actual *music* copyright infringement. Similarly, whether other

24   users' posts were removed for suspected or actual copyright violations is not relevant to

25   the claims or defenses here. For these reasons, the motion to compel as to Topic 11 is also

26   DENIED.

27

28   Topic 12: TikTok's process for identifying and removing posts that

19

1    infringe or potentially infringe another's copyrighted work.[15]

2    <u>Topic 13</u>:  TikTok's process for monitoring and enforcement of its policies
3    and procedures regarding the use of music of the TikTok platform.

4    TikTok has agreed to designate a witness to discuss its Intellectual Property Policy,

5    which includes the process for submitting a copyright infringement report and requesting

6    its removal.  (Jt. Stip. at 32-33).  TikTok notes that Movants appear to misunderstand

7    what TikTok is -- a content host that stores content at the direction of its users and is

8    immunized by Congress from liability, provided it complies with the DMCA by

9    implementing a robust notice-and-takedown policy.  (*Id*. at 33, 35).  Movants state that

10    they are seeking information not only about TikTok's notice-and-takedown policy, but

11    about TikTok's "own affirmative identification and removal of posts that infringe or

12    potentially infringe another's copyrighted work, . . . irrespective of reports or takedown

13    requests from others."  (*Id*. at 32, 34).

14

15                                   **DECISION**

16

17    The Court finds that information regarding TikTok's process for identifying and

18    removing posts that infringe or potentially infringe another's copyrighted work related to

19    the use of music from TikTok's libraries is relevant to this lawsuit.  For this reason, the

20    motion to compel as to Topic 12 is GRANTED, as limited to information about

21    infringement of copyrights related to the use of music from TikTok's musical libraries.

22    As to Topic 13, TikTok asserts that in determining whether a user has posted infringing

23    content, it relies on the copyright holder to notify TikTok of an infringing use of material,

24    and TikTok in turn removes the material and provides the user of notice and an

25    opportunity to respond.  TikTok states that in line with its DMCA policy, repeat infringers

26    are terminated from the platform.  Because the Court finds that the information sought in

27

28    ---
[15] During the meet and confer discussions, Movants "clarified" that Topics 12 and 13 seek information "about infringement of copyrights related to the use of music from TikTok's musical libraries."  (Jt. Stip. at 32, 34).

1    Topic 13 is relevant and proportional to the needs of the case, the motion to compel as to

2    Topic 13 is likewise GRANTED.

3

4            **3.      Analytics Data (Topic No. 14)**

5

6        Topic 14:  TikTok's monthly analytics data, including the number of
         followers, profile and video views, engagements, likes, comments, and
7        shares, for the @bangenergy and @bangenery.ceo accounts from January
         2017 to the present.

8

9        TikTok states that after investigating the issue, it determined that its systems "only

10   store a user's accounts monthly data for the previous 90 days."  (Jt. Stip. at 36).  Because

11   it does not have the data to respond to this topic, TikTok contends that the request for

12   Topic 14 should be denied as moot.[16]  (*Id*.).  Movants state that TikTok had previously

13   told them that data on its dashboard was available for only the past 60 days, and that

14   "TikTok never conveyed to Bang any 90-day limitation, or what specific search and

15   retrieval process was executed."  (*Id*.).  Despite TikTok's representation about the limited

16   retention of analytic data, Movants assert that "[i]f the data is available for the full

17   requested time period of January 2017 to the present, following a reasonable search and

18   retrieval, it should be produced."  (*Id*.).  At the hearing on the Motion, Movants

19   maintained that data which predated the posting of the alleged infringing videos should be

20   disclosed as it would demonstrate any historical trends related to before the time the

21   videos were posted and after.

22

23                              **DECISION**

24

25       The Court finds that data related to Movants' own accounts is relevant and should

26

27   ───────────────

     [16] At the hearing on this Motion, TikTok stated that it can obtain "aggregate data," which
     is a summary of data related to a user's account up to the current date.  However, this data
28   will not be broken down month by month, which TikTok indicated is only maintained for
     the previous 90-day period.

be disclosed to the extent that it exists.  Furthermore, at the hearing, TikTok conceded that

some aggregate data is available.  For this reason, the motion to compel as to Topic 14 is

GRANTED IN PART.  TikTok shall produce a witness to testify about aggregate data

from January 1, 2019, to the present related to Movants' accounts.

### 4.    TikTok's Agreements With The Labels, And Enforcement And Implementation Of Same (Topics 16 and 17)

Topic 16: TikTok's contracts, agreements, licenses, and amendments with
the following entities (collectively "Labels") that relate to the use of sound
recordings owned or controlled by the Labels on TikTok or available in
TikTok's music library between 2016 and present:

> A. UMG Recordings, Inc.
> B. Universal Music Corp.
> C. Universal Music - Z Tunes LLC
> D. Universal Musica, Inc.
> E. PolyGram Publishing, Inc.
> F. Songs of Universal, Inc.
> G. Universal Music - MGB NA LLC
> H. Capitol Records, LLC

TikTok agreed to designate a witness to testify about the terms in its agreements

with UMG Recordings and UMG-affiliated entities regarding the commercial and non-

commercial use of music, which it maintains is all that is relevant to the claims and

defenses in the Florida Action.  (Jt. Stip. at 38).  To the extent that Movants seek more,

TikTok argues that the information is either not relevant, disproportionate to the needs of

the case, or can be more properly obtained from a party to the Florida Action.  (*Id*. at 38-

40).  TikTok notes that the two cases cited by Movants for the proposition that objections

based on the equal availability of documents are insufficient to resist a discovery request

-- *Zuniga v. W. Apartments*, 2014 WL 2599919, at *3 (C.D. Cal. Mar. 25, 2014), and *In re

Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litigation*, 2012

WL 10450139, *3 (C.D. Cal. June 7, 2012), are inapposite because they concern

production by a party to the litigation, not a third party.  (Jt. Stip. at 39-40).  Movants

contend that TikTok has not agreed to provide a witness to testify about the financial

compensation terms of the agreements or the scope of any releases or authorizations, "all of which bear on any potential liability or damages claims" asserted against Movants by the Labels.  (*Id*. at 38).  Furthermore, citing *Zuniga* and *HAMP*, Movants assert that the availability of the requested information from other parties does not discharge TikTok from its obligation to comply with the subpoena, particularly as TikTok has "not made any showing of any undue burden it would incur in producing responsive documents and information."  (*Id*.).

## DECISION

TikTok has agreed to designate a witness to testify about the terms in its agreements with the Labels regarding the commercial and non-commercial use of music, which the Court finds to be the relevant information to which Movants are entitled.  For this reason, the motion to compel as to Topic 16 is DENIED to the extent that it seeks information exceeding the scope of TikTok's agreed-upon designation.[17]

> Topic 17:  Any and all guidelines, directions, and communications received by TikTok from the Labels concerning the use of the Labels sound recordings on TikTok.

TikTok has agreed to produce a witness to discuss "any guidelines or directions from the Labels that relate to whether TikTok's agreement with the Labels includes 'commercial' use by a user." (Jt. Stip. at 41).  TikTok argues that if Movants seek more, the information is irrelevant or more properly obtained from a party to the Florida Action.  (*Id*. at 41-42).  Movants argue that TikTok's proposal is too narrow, as the subpoena seeks "all of the permitted and prohibited uses under the agreements with the Labels and how they were implemented, enforced, and interpreted in practice."  (*Id*. at 41).  Movants

---

[17] The Court notes that RFP 1, which is a document production request which mirrors Topic 16, was also propounded on the Labels directly in the Florida Action.  However, the Magistrate Judge in Florida denied the motion to compel RFP 1 as untimely.  *See* "Omnibus Order," Florida Action, Dkt. No. 116 at 8-9.

1   further cite *Zuniga* and *HAMP* for the proposition that the availability of the requested

2   information from other parties does not discharge TikTok from its obligation to comply

3   with the subpoena.  (*Id*.)

4

5                        **DECISION**

6

7        The Court finds that Topic 17 is overly broad and not tailored to the issues in this

8   case.  For these reasons, the motion to compel as to Topic 17 is DENIED.

9

10           **5.**      **TikTok's Communications With Other Brands Regarding The**

11                  **Use  Of Music On TikTok Posts (Topic 18)**

12

13   Topic 18:  Any and all communications with the following companies concerning the use of music in their respective posts appearing on TikTok:

14         A. Celsius Energy
            B. Alani Nu

15         C. C4 Energy
            D. Sway Energy

16         E. Fashion Nova
            F. G Fuel

17         G. Ghost Nutrition

18

19        TikTok has not agreed to designate a witness for Topic 18 because "information

20   about communications between nonparty TikTok and *other* nonparties has no conceivable

21   relevance to a claim or defense in this case, to say nothing of proportionality."  (Jt. Stip. at

22   44).  According to TikTok, those communications shed no light on whether Movants

23   believed that they had a license or implied license, or that their infringement was innocent.

24   (*Id*.).  Additionally, TikTok maintains that the request is overbroad and not proportional to

25   the needs of the case.  (*Id*. at 45).  Finally, TikTok argues that the Stored Communications

26   Act ("SCA"), 18 U.S.C. §§ 2702(c), 2703(c)(1), bars it from disclosing the "contents of

27   communications" of other users.  (*Id*.) (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098,

28   1106 (9th Cir. 2014)).  Movants argue that TikTok's communications with other brands

1    with commercial uses and accounts on TikTok bear on TikTok's "complex and unclear

2    usage policies and mechanics" and on Movants' reasonable belief that they were not

3    violating TikTok's policies or others' copyrights.  (*Id*. at 43).  Furthermore, Movants

4    assert that none of the information they request is barred by the SCA because TikTok is

5    not an email service or storage repository, and the information is not stored on TikTok's

6    social media platform.  (*Id*.).

7

8                                **DECISION**

9

10          The Court finds that Topic 18, as written, is overly broad and not proportional to

11    the needs of the case.  The information sought may also be barred from disclosure by the

12    Stored Communications Act.  For these reasons, the motion to compel as to Topic 18 is

13    DENIED.

14

15    **B.**    **Production Requests**

16

17          **1.**    **Agreements Between TikTok And The Labels And**

18                **Communications Regarding Same, And Monitoring Of Use Of**

19                **Labels' Music (Request Nos. 1-4)**

20

21    RFP No. 1:  Any and all contracts, agreements, licenses, amendments,
      between TikTok Inc. (and its predecessor music.ly) (collectively referenced
      herein as "TikTok") and the following entities (collectively "Labels") that

22    relate to the use of sound recordings owned or controlled by the Labels on
      TikTok or available in TikTok's music library between 2016 and present:

23

24          A. UMG Recordings, Inc.
            B. Universal Music Corp.
25          C. Universal Music – Z Tunes LLC
            D. Universal Musica, Inc.
26          E. PolyGram Publishing, Inc.
            F. Songs of Universal, Inc.
27          G. Universal Music - MGB NA LLC
            H. Capitol Records, LLC

28

TikTok states that it agreed to produce, and has produced, "its effective license agreements with Universal Music that would have applied to the period at issue in the suit, which contain the scope of rights language . . . ."[18] (Jt. Stip. at 49). However, TikTok further contends that the scope of rights language in the agreements establishes that *its* agreements with the Labels are not relevant to the Florida Action. TikTok's Terms of Service expressly state that "no rights are licensed with respect to sound recordings" in its musical libraries, (*id*. at 48), and the Labels' theory of liability is that Movants exceeded *TikTok*'s Terms of Service by using music for commercial purposes without a license. (*Id*. at 49). Finally, TikTok argues that the discovery sought by RFP No. 1 is available from the parties to the Florida Action, and it is less burdensome and more efficient to require parties to the litigation to produce documents in their possession. (*Id*. at 49-50). Movants note that TikTok's written response to RFP No. 1 indicates that it will produce only the agreement "in effect when the complaint was filed," and it has refused to produce term extensions to the agreement. (*Id.* at 47). Although Movants acknowledge that the Labels have produced a copy of a music licensing agreement with TikTok, the copy was "heavily redacted" with respect to financial compensation terms and the scope of new releases and authorizations. (*Id*.). Movants further observe that they have filed a pending motion to compel against the Labels in the Florida Action to require production of unredacted license agreements and communications with TikTok regarding the same. (*Id*. at 48). Finally, Movants once again cite *Zuniga* and *HAMP* for the proposition that the availability of discovery from another party does not discharge the obligation of a responding party to comply with a subpoena. (*Id*.).

At the hearing, counsel for Bang Energy clarified that it received a 2016 licensing agreement between the Labels and music.ly, TikTok's predecessor, which had been heavily redacted. Further, counsel added that there were more than 10 amendments and

---

[18] TikTok notes that the Florida Action concerns alleged infringements that occurred prior to April 2021. (Jt. Stip. at 49).

1    modifications to that agreement, only some of which had been produced, and then only in

2    part, and that Movants have not to date received a full set of even that agreement and its

3    amendments.  Second, there was a settlement agreement between the Labels and Tiktok

4    which was produced in a heavily redacted form.  Finally, there was an "alliance

5    agreement" which was not produced.  TikTok responded that many of the redactions in

6    the licensing and settlement agreements had to do with financial information regarding

7    how much TikTok pays the Labels, which is highly sensitive information which should

8    not be disclosed.  Movants stated that they propounded RFP No. 1 against the Labels in

9    the Florida Action, seeking the same information from the Labels that they seek here from

10    TikTok, and moved to compel a complete response to RFP No. 1 in the Florida court.

11    That motion was denied by the Magistrate Judge in the Florida Action as untimely.

12

13                                        **DECISION**

14

15        Movants are not entitled to receive any documents beyond those that TikTok has

16    provided, or agreed to provide.  For this reason, the motion to compel as to RFP No. 1 is

17    DENIED to the extent that it seeks documents exceeding the scope of TikTok's agreed-

18    upon production.

19

20        RFP No. 2:  Any and all guidelines, directions, and communications
        received by TikTok from the Labels concerning the use of the Labels sound
21        recordings on TikTok.

22        In its written response to RFP No. 2, TikTok agreed to produce "any guidelines or

23    directions from the Labels that relate to whether TikTok's agreement with the Labels

24    includes 'commercial' use by a user, to the extent such documents exist and can be located

25    in a reasonably diligent search."  (Jt. Stip. at 51).  According to TikTok, Movants have not

26    explained why anything more is relevant to Movants' case.  (*Id*. at 53).  TikTok also

27    argues that the requested communications are not relevant and, alternatively, are available

28    from the Labels themselves.  (*Id*. at 52).  Movants contend that they are seeking not only

guidelines and directions about whether the agreements include commercial use by a user,
but also "communications about the permitted and prohibited uses under the agreements
with the Labels and how they were implemented, enforced, and interpreted in practice,
including any programmatic controls on the app and communications to users regarding
the same." (*Id*. at 52). Movants further argue that the Labels' production of an agreement
with TikTok was heavily redacted, rendering it unusable. (*Id*.).

## DECISION

TikTok has agreed to produce any guidelines or directions from the Labels that
relate to whether TikTok's agreements with the Labels include commercial use by a user,
which the Court finds to be the relevant inquiry. Any further production is not warranted.
For this reason, the motion to compel as to RFP No. 2 is DENIED to the extent that it
seeks documents exceeding the scope of TikTok's agreed-upon production.

RFP No. 3: The name(s) of any company TikTok retained or was directed
to utilize for the purpose of monitoring the use of the Labels' sound
recordings.

In lieu of producing documents responsive to this request, TikTok simply identified
ACRCloud in its written response as the company it used to assist in audio fingerprinting
(matching user-generated content with sound recordings in TikTok's database) at the time
of the filing of the complaint. (Jt. Stip. at 54). Nonetheless, TikTok maintains that
whatever company it used for audio fingerprinting has no relevance to whether Movants
knew or had reason to know that their posts were allegedly infringing on the Label's
copyrights. (*Id*.). Additionally, TikTok notes that audio fingerprinting companies do not
monitor compliance with TikTok's agreements or provide notices to users of any alleged
use violations or potential infringement. (*Id*.). Movants contend that TikTok's limitation
of its response to the company it used "at the time of the filing of the complaint" is
insufficient because the relevant period dates back to 2016. (*Id*.). Movants further

1   contend, despite TikTok's representation to the contrary, that the requested information

2   "bears directly on any notices provided to users of any alleged use violations or even

3   infringement." (*Id*.).

4

5                                          **DECISION**

6

7           The Court finds that RFP No. 3 is not relevant to any claims or defenses in this

8   case. For this reason, the motion to compel as to RFP No. 3 is DENIED.

9

10          <u>RFP No. 4</u>: Any and all reports TikTok provided to the Labels regarding
            the use of the Labels' sound recordings between 2017 and present.[19]

11

12          TikTok "agreed to search for internal data related to the sound recordings in the

13  'post URLs' that are at issue in this suit," as it contends that is "the only data that has any

14  conceivable relevance to this case." (Jt. Stip. at 56). According to TikTok, Movants have

15  not articulated any reason why it needs more information, or even what that information

16  might be. (*Id*.). TikTok also argues that even if Movants had identified such information,

17  it is available from the Labels. (*Id*.). Movants contend that TikTok's limitation to provide

18  "internal data" is not sufficient because they seek reports on the use of the songs at issue,

19  including who used the songs, how often, whether such uses were consistent with

20  TikTok's stated policies and agreements with the Labels, and whether any enforcement or

21  other corrective action was taken because of the reported uses. (*Id*. at 55-56).

22

23                                         **DECISION**

24

25          To the extent that this information has any possible relevance to the claims and

26  defenses in this action, the information can be, or should be, sought from the Labels

27  _____

28  [19] During the meet and confer discussions, Movants agreed to limit this request "to the songs at issue in the Underlying Action, as reflected in exhibits provided to TikTok." (Jt. Stip. at 55).

directly, as they are parties to the Florida Action.  However, the Court finds that the

information requested by RFP No. 4 is not relevant to this litigation.  For these reasons,

the motion to compel as to RFP No. 4 is DENIED.

> **2.      TikTok's Copyright And Music Use Policies And Procedures,
> Enforcement, And Notifications To Users As To Same (Request
> Nos. 5-8)**

> RFP No. 5:  Documents related to TikTok's policy regarding limitations on
> commercial or business users ("Commercial Users") of the TikTok
> platform to a different library of music than non-commercial or non-
> business users ("Non-Commercial Users"), including the purpose of this
> distinction in users, TikTok's reasons for making this distinction, any steps
> TikTok took to make this distinction known to Commercial and/or Non-
> Commercial Users, and any steps TikTok took to enforce this change in
> policy.

> RFP No. 6: TikTok's communications with Commercial Users and/or Non-
> Commercial Users informing the users which music library they were
> permitted to use and informing or instructing them on which music library
> they were permitted to use.

> RFP No. 7:  TikTok's communications with Commercial Users and/or
> Non-Commercial Users, including Defendants Vital Pharmaceuticals, Inc.
> d/b/a Bang Energy, and Jack Owoc ("Defendants") and Defendants'
> representatives, regarding the use of music in videos created or posted on
> the TikTok platform, including any copyright policies, disclaimers, and/or
> restrictions on such use.

> RFP No. 8: TikTok's terms, conditions, policies, guidelines, and other
> communications relating to Commercial Users' use of TikTok's
> commercial and non-commercial music libraries on the TikTok platform
> beginning in 2016 to present.

TikTok has agreed to produce its Terms of Service for its commercial library of

music and states that it "in fact already collected and produced other documents that

provide its policies for its commercial library of music."  (Jt. Stip. at 58, 61, 64, 66).[20]

TikTok explains that its "agreement to provide its Terms of Service, Intellectual Property

Policy, Community Guidelines, and terms for its commercial music library" should

---

[20] TikTok notes that Movants copy the same arguments verbatim in connection with RFP
Nos. 5-8.  Accordingly, TikTok incorporates its contentions concerning RFP No. 5 in
response to RFP Nos. 6-8.

resolve Movants' contention that they "relied on TikTok's representations and practices," (*id*. at 59), and asserts that Movants have "failed to provide any meaningful reason why something beyond what TikTok agreed to produce is relevant or proportional to the needs of the case." (*Id*. at 60).  According to TikTok, Movants' belief that its "commercial use parameters changed" is misguided, as its last update to the Terms of Service was in 2019, a year before the creation of the commercial music library.  (*Id*. at 59).  As such, Movants were "never authorized by TikTok to use its general music library for commercial purposes."  (*Id*.).  Movants contend that RFP No. 5 seeks documents "regarding distinctions between commercial and other users and uses on the TikTok platform, and whether and how TikTok differentiated between the two, the history of such differentiation, and how it was enforced, implemented, and communicated to TikTok users over time."  (*Id*. at 57-58, 60-61, 63, 65).  Movants state that TikTok's agreement to provide its current policies is insufficient as it excludes the historical policy changes, and information about how those changes were communicated to users.  (*Id*. at 58, 61, 63, 66).

## DECISION

At the hearing on the Motion, TikTok stated that it has already produced the documents requested in RFP Nos. 5-8, including the Terms of Service, community guidelines, and policies regarding its commercial music library.  However, the Court finds that some of the information sought in these RFPs is relevant, and to the extent that it exists, should be produced.  For this reason, the motion to compel as to RFP Nos. 5-8 is GRANTED IN PART and DENIED IN PART.  Specifically, the motion to compel as to RFP Nos. 5-6 is DENIED.  The motion to compel as to RFP No. 7 is GRANTED IN PART, as limited to any communications between TikTok and Movants, but not any other users.  Finally, the motion to compel as to RFP No. 8 is GRANTED IN PART.  TikTok is ORDERED to produce its Terms of Service, including updates, as sought in the request.

### 3.    TikTok's Communications And Involvement As To

### TikTok Posts For The Bang Energy Brand (Request No.

### 9)

<u>RFP No. 9</u>:  Documents reflecting TikTok's involvement and communications with Commercial Users and Non-Commercial Users, including Defendants and Defendants' representatives, regarding posts on TikTok related to Bang Energy, including but not limited to the post attached hereto as Exhibit 1, Bates No. VPX-UMG-000090 and VPX-UMG- 000094.

TikTok has agreed to produce communications that relate to the making of Movants' posts to the extent that such communications exist and can be found after a reasonable search.  (Jt. Stip. at 68).  Movants state that this is too narrow, as the request seeks communications regarding posts related to the Bang Energy brand, which includes posts by other users on other user accounts, particularly "influencers" who "posted videos that related to Bang."  (*Id*. at 67).  TikTok responds that Movants have never before mentioned "influencers" and still do not identify who they are.  (*Id*. at 68).  Furthermore, TikTok states that it "would have no way of knowing what 'influencers,' if any, Bang Energy used to make posts or whether those posts related to Bang Energy."  (*Id*.).

### DECISION

RFP No. 9 seeks documents related to TikTok's involvement and communications with Bang Energy and Bang Energy's "influencers."  For the reasons previously stated, the Court finds that it is not TikTok's burden to search for Bang's "influencers" and their posts, which are, or should be, known to Bang.  Therefore, the Court will not order production of documents related to influencers.  For this reason, the motion to compel as to Topic 8 is GRANTED IN PART.  TikTok is ORDERED to produce documents, to the extent they exist, related to TikTok's involvement or communications with Movants regarding Bang Energy's video posts alleged to have infringed the Labels' copyright.

32

**4.    TikTok's Communications to Users Regarding**

**Permissible And Impermissible Use Of Music On TikTok**

**and Similar Confusion On Permitted Uses (Request Nos.**

**10-14)**

RFP No. 10: Documents reflecting any confusion expressed to TikTok by TikTok users, including related to users' rights to use any music in TikTok's musical libraries on the TikTok platform.

TikTok has not agreed to produce documents responsive to RFP No. 10. (Jt. Stip. at 69). According to TikTok, Movants have never articulated "any reason why copyright infringement by other users -- or other users' understanding of TikTok's terms of service -- could have any bearing on its defenses." (*Id*. at 70). TikTok maintains that other users' understanding or "confusion" does not have any relevance to what Movants understood, and Movants are already in possession of whatever representations they contend TikTok made to them. (*Id*.). Furthermore, TikTok asserts that the requests are overbroad. (*Id*. at 71). Movants argue that they are seeking documents and information about other "similarly situated" TikTok users, including other brands with commercial accounts with TikTok, with a bearing on the "complex and unclear usage policies and mechanics" that permitted Movants to create posts using music supplied on TikTok's platform. (*Id*. at 69). Because Movants did not receive any notice from TikTok that their posts violated any policies and their posts were not taken down, Movants believe that they are entitled to know if other users made similar use of songs from TikTok's library and whether their posts were taken down. (*Id*.). According to Movants, this information "bears directly" on Movants' reasonable belief that they were not violating TikTok's policies or others' copyrights. (*Id*. at 69-70).

**DECISION**

The Court finds that RFP No. 10 is not relevant to the issues related to this case.

33

The Court is not persuaded that confusion experienced by other users has any bearing on whether Bang Energy's alleged infringement was willful or innocent. Further, the term "any confusion" is vague and unclear. For these reasons, the motion to compel as to RFP No. 10 is DENIED.

> RFP No. 11: Documents related to the number of accounts that have been suspended or terminated on the TikTok platform as a result of alleged or actual copyright violations from 2016 through the present.[21]

> RFP No. 12: Documents related to the number and nature of posts removed from the TikTok platform as a result of alleged or actual copyright infringement violations or copyright infringement allegations from 2016 through the present.

TikTok has not agreed to produce documents responsive to RFP Nos. 11 and 12 as it contends that information about its suspensions and terminations is neither relevant to the claims and defenses in the Florida Action nor proportional to the needs of the case.[22] (Jt. Stip. at 72-73, 75). TikTok receives notices of copyright violations through the DMCA process, which is a shield to liability for TikTok, but does not offer any protection to a user that posts allegedly infringing content. (*Id*. at 73). Furthermore, TikTok argues that whether other users engaged in copyright infringement or had their accounts terminated has no bearing on whether *Movants* engaged in copyright infringement. (*Id*. at 74). Movants argue that information about other users bears on TikTok's "complex and unclear usage policies and mechanics" and whether and how TikTok informed users of violations of music library uses. (*Id*. at 72, 75). Movants contend that evidence of others' confusion will show that they reasonably relied on TikTok's provisioning of access to the

---

[21] During the meet and confer discussions, Movants "clarified" that RFP Nos. 11 and 12 seek only information "related to the number of suspended or terminated accounts due to music copyright violations based on music from TikTok's music libraries, not for any user-supplied music." (Jt. Stip. at 72).

[22] Although TikTok did not agree to produce additional documents in response to RFP No. 12, in its written response, TikTok provided links to its Terms of Service and Intellectual Property policy, which describe the circumstances in which a user account may be terminated. (Jt. Stip. at 75).

songs in its music library and did not intend to infringe any copyrights.  (*Id*. at 73, 76).
Furthermore, with respect to TikTok's links to its on-line Terms of Service and
Intellectual Property policy in response to RFP No. 12, Movants argue that TikTok's
current Terms of Service and policies "likely reflect a 'cleaned up' version of these
documents," even though the Terms of Service were last updated in 2019, a year before
the creation of the commercial music library.  (*Id*. at 76).

## DECISION

The Court finds that the documents sought in RFP Nos. 11-12 are not relevant to
the issues in this case.  For this reason, the motion to compel as to RFP Nos. 11-12 is
DENIED.

> RFP No. 13:  Documents sufficient to show TikTok's process for
> monitoring and enforcing its policies and procedures regarding the use of
> music of the TikTok platform, including identification and removal of, and
> notifications for, posts that infringe or potentially infringe another's
> copyrighted work.

TikTok agreed to produce its Intellectual Property policy in response to RFP No.
13, which sets forth TikTok's "process for monitoring and enforcing its policies and
procedures regarding the use of music on TikTok's platform." (Jt. Stip. at 79).  TikTok
states that if Movants require prior versions of its policy, they, like the current policy, are
archived on-line.  (*Id*.).  Additionally, TikTok argues that Movants fail to explain why its
internal processes are even relevant and once again appear to misunderstand TikTok's
function as a content host.  (*Id*. at 78).  Movants state that in addition to TikTok's notice-
and-takedown policy, which concerns acting on reports by parties other than TikTok, they
are seeking "documents and information about TikTok's process and efforts for its own
affirmative identification and removal of posts that infringe or potentially infringe on
another's copyrighted work." (*Id*. at 77).  Movants also contend that TikTok's current
policy likely reflects a "cleaned up" version after TikTok addressed claims by music

rights holders for the songs on its platforms.  (*Id*. at 78).

**DECISION**

The Court finds that information related to the monitoring and enforcing of TikTok's policies and procedures regarding the use of music in its platform is relevant, as is information relating to TikTok's policies and procedures regarding the removal of posts that infringe, or potentially infringe, copyrighted work.  For this reason, the motion to compel as to RFP No. 13 is GRANTED.

> RFP No. 14: Documents and communications related to the monitoring, identification, enforcement, and/or removal of posts related to Bang Energy, including for the @bangenergy, @bangenergy.ceo, and other user accounts on the TikTok platform.

TikTok has agreed to produce "communications that relate to the monitoring, identification, enforcement, and/or removal of posts on @bangenergy or @bangenergy.ceo for music copyright reasons." (Jt. Stip. at 80).  Movants state that this is too narrow, as the request seeks communications regarding posts related to the Bang Energy brand, which includes posts by other users on other user accounts, particularly "influencers" who "posted videos that related to Bang." (*Id*.).  TikTok responds that Movants have never identified who these "influencers" or other users are, (*id*.), which it maintains is information that "would be exclusively within [Movants'] possession." (*Id*. at 81).

**DECISION**

For the reasons previously stated, the Court will not order production of communications between TikTok and Bang Energy's "influencers."  For this reason, the motion to compel as to RFP No. 14 is DENIED to the extent that it seeks documents

exceeding the scope of TikTok's agreed-upon production.

> RFP No. 15: TikTok's monthly analytics data, including the number of followers,  profile and video views, engagements, likes, comments, and shares, for the @bangenergy and @bangenery.ceo accounts from January 2016 to the present.

TikTok states that it has determined that its systems store a user's monthly data for only the previous 90 days.  (Jt. Stip. at 82).  As such, TikTok contends that the request should be denied because it does not have data to respond to the request.  (Jt. Stip. at 82).  Despite TikTok's representation, Movants state that "[i]f the data is available for the full requested time period of January 2017 to the present, following a reasonable search and retrieval, it should be produced."  (*Id*. at 81).  Movants further note that TikTok never conveyed to them "what specific search and retrieval process was executed, only that its engineers were looking into the retrieval and available data."  (*Id*.)

**DECISION**

Because TikTok has asserted that monthly analytic data is not available, and the Court cannot order production of information and documents that do not exist, the Court will not order such.  However, as previously stated, the Court finds that aggregate data from January 1, 2019 to the present related to Movants' accounts is relevant and must be produced to the extent it exists.  For this reason, the motion to compel as to RFP No. 15 is GRANTED IN PART.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# V.

## CONCLUSION

The Motion to Compel filed by Movants Vital Pharmaceuticals, Inc. is GRANTED IN PART and DENIED IN PART.  TikTok shall serve supplemental written responses and produce responsive documents, if any, to the production requests for which a supplemental response is required by this Order within fourteen days of the date of this Order.  If no documents exist that are responsive to a production request for which a supplemental response is required, the response shall affirmatively so state.  TikTok shall present a corporate witness or witnesses to testify consistent with this Order at a mutually agreeable date at time, but in no case not later than thirty days from the date of this Order.

DATED:  June 13, 2022

_____
PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE